UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
RITIKA KOHLI,                                          :
                                                       :
                              Plaintiff,               :
                                                       :
              -against-                                :          **OPINION & ORDER**
                                                       :          17-cv-03154 (DLI)(RLM)
INDEPENDENT RECOVERY RESOURCES,                        :
INC. and REPRODUCTIVE SPECIALISTS                      :
OF NEW YORK, LLP,                                      :
                                                       :
                              Defendants.              :
---------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

On May 24, 2017, Plaintiff Ritika Kohli ("Plaintiff") commenced this action against

Independent Recovery Resources, Inc. ("IRR"), Anita Manghisi ("Manghisi"), and Reproductive

Specialists of New York, LLP ("RSNY") (collectively, "Defendants"), asserting claims under the

Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") and Fair Credit Reporting

Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), as well as New York state law claims for breach of

contract, gross negligence, and violation of New York General Business Law § 349 ("GBL §

349"). *See, generally*, Compl., Docket ("Dkt.") Entry No. 1. Before the Court are Plaintiff's and

RSNY's cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.

Plaintiff moved for summary judgment on the only remaining claims against RSNY, which

are state law claims for breach of contract, gross negligence, and violation of GBL § 349. *See*,

Notice of Mot. for Summ. J., Dkt. Entry No. 108; Mem. of Law in Supp. of Mot. for Summ. J. as

to Claims Alleged Against Reproductive Specialists of New York, LLP ("Pl. Mem."), Dkt. Entry

No. 108-1; Plaintiff's Statement of Uncontested Facts Pursuant to Local Rule 56.1(a) ("Pl. 56.1"),

Dkt. Entry No. 108-2; Pl. Exs. 1-21, Dkt. Entry Nos. 108-3 to 108-23. RSNY opposed Plaintiff's

motion.  *See*, Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J. ("Def. Opp'n"), Dkt. Entry No. 109; Def. Reproductive Specialists of New York LLP's Counter-Statement of Material Facts ("Def. CSOF 56.1"), Dkt. Entry No. 109-1; Exs. 1-2, Dkt. Entry Nos. 109-2 to 109-3.  Plaintiff replied.  *See*, Mem. of Law in Reply to Def.'s Opp'n to Pl.'s Mot. for Summ. J. ("Pl. Reply"), Dkt. Entry No. 110.

RSNY cross-moved for summary judgment against Plaintiff.  *See*, Notice of Mot., Dkt. Entry No. 96; Mem. of Law in Supp. of Reproductive Specialists of New York, LLP's Mot. for Summ. J. ("RSNY Mem."), Dkt. Entry No. 97; Def. Reproductive Specialists of New York, LLP's Local Rule 56.1 Statement ("RSNY 56.1"), Dkt. Entry No. 98; Aff. of Emily Harper ("Harper Aff."), Dkt. Entry No. 99; Aff. of Michael Pagliuca ("Pagliuca Aff."), Dkt. Entry No. 100; Aff. of Patricia Hennessy ("Hennessy Aff."), Dkt. Entry No. 101; Letter correcting filer information on ECF Doc. No. 96, Dkt. Entry No. 113.  Plaintiff opposed RSNY's motion.  *See*, Mem. of Law in Opp'n to Mot. for Summ. J. ("Pl. Opp'n"), Dkt. Entry No. 105; Resp. to Def.'s Local Rule 56.1(a) Statement of Purportedly Undisputed Facts ("Pl. CSOF 56.1"), Dkt. Entry No. 107.  RSNY replied. *See*, Reply Mem. of Law in Supp. of Reproductive Specialists of New York, LLP's Mot. for Summ. J. ("Def. Reply"), Dkt. Entry No. 103.

For the reasons set forth below, Plaintiff's motion is denied in its entirety and RSNY's motion is granted in its entirety.  Accordingly, Plaintiff's claims against RSNY are dismissed.

## BACKGROUND

### I.    Relevant Facts

The following facts are taken from the parties' Local Civil Rule 56.1(a) statements, affidavits, and exhibits.  Unless otherwise noted, these facts are not in dispute.  As it must, the Court has considered only facts recited by Plaintiff and RSNY in their respective Rule 56.1

statements and responses that are established by admissible evidence and disregarded conclusory allegations and legal arguments contained therein. *See*, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("[W]here there are no[] citations or where the cited materials do not support the factual assertions in the [s]tatements, the Court is free to disregard the assertion.") (internal quotation marks and citations omitted).

RSNY is a fertility clinic that, among other services, provides embryo storage. Def. 56.1, ¶ 1; Pl. CSOF 56.1, ¶ 1. In 2007, Plaintiff and her then husband, Harpel Hira ("Hira"), sought fertility treatment from RSNY. Pl. 56.1, ¶ 1; Def. CSOF 56.1, ¶ 1. Prior to receiving treatment, Plaintiff and Hira executed a document entitled "Consent to Cryopreserve Embryos and Decisions as to Future Dispositions" (the "Consent Agreement"). Def. 56.1, ¶ 2; Pl. CSOF 56.1, ¶ 2; Pl. 56.1, ¶ 2; Def. CSOF 56.1, ¶ 2. The Consent Agreement governs the terms of the preservation and disposition of Plaintiff's and Hira's cryopreserved embryos (the "Embryos").

As relevant here, the Consent Agreement provides that: (1) after the Embryos have been stored for five years, Plaintiff and Hira are "required to contact [RSNY]" regarding their final disposition and, in the event that the Embryos have been stored for five years, "it is the policy of [RSNY] that the disposition of the [Embryos] should occur at that time[]"; (2) in the event of divorce or permanent separation, the Embryos "shall . . . [b]e discarded according to laboratory procedure"; (3) Plaintiff and Hira agree to "promptly notify" RSNY in writing of any change of address as long as the Embryos are in storage; and (4) Plaintiff and Hira agree that, if they fail to pay storage fees, RSNY "shall" attempt to contact them and, if such contact cannot be made, RSNY "is authorized" to dispose of the Embryos. Harper Aff., Ex. A at Ex. 2 (Consent to Cryopreserve Embryos and Decisions as to Future Disposition, executed on July 30, 2007); Def. 56.1, ¶ 2; Pl. CSOF 56.1, ¶ 2. The Consent Agreement further provides that it "will govern even

in the face of future changes in circumstances (unless [Plaintiff and Hira] mutually agree and change [their] decisions . . . in writing)." Harper Aff., Ex. A at Ex. 2; Pl. 56.1, ¶ 5; Def. CSOF 56.1, ¶ 5.

In August 2008, Hira attempted to stab Plaintiff. Pl. 56.1, ¶ 10; Def. CSOF 56.1, ¶ 10. When Plaintiff's mother rushed to Plaintiff's defense, Hira stabbed and killed her. *Id.* Subsequently, Hira was convicted for the murder of Plaintiff's mother. Def. 56.1, ¶ 3; Pl. CSOF 56.1, ¶ 3.

Following this tragedy, Plaintiff no longer wished to preserve the Embryos. Pl. 56.1, ¶ 12. Plaintiff claims that, sometime in 2008, she called RSNY to ask that the Embryos be discarded and that she no longer be billed for storage fees. *Id.* at ¶¶ 11-12, 16. According to Plaintiff, she spoke to an unidentified RSNY representative who advised her that RSNY was aware of the murder and no longer would bill her for the storage of the Embryos. *Id.* at ¶ 16. The RSNY representative further informed Plaintiff that "she may receive something in writing from RSNY confirming that the [E]mbryos would be discarded, and even if she did not receive anything in writing, RSNY . . . would note her account." *Id.* at ¶ 17. RSNY disputes Plaintiff's account of the 2008 phone call and notes that neither RSNY nor Plaintiff have a record of this phone call. Def. CSOF 56.1, ¶ 11. RSNY further notes that, per industry standards and RSNY protocol, embryos will not be discarded absent contemporaneous written authorization and, therefore, no one at RSNY would have had the authority to tell a patient that her embryos would be destroyed based on a verbal request. *Id.* at ¶¶ 11-12.

The last payment for storage of the Embryos that RSNY received was on May 21, 2008 in the amount of $130.00. Def. 56.1, ¶ 32; Pl. CSOF 56.1, ¶ 32; *See also*, Compl. ¶ 59. RSNY sent Plaintiff six invoices between May 28, 2009 and July 15, 2015. Pl. 56.1, ¶¶ 18-23; Def. CSOF

56.1, ¶¶ 18-23.  These invoices were sent to Plaintiff's address in Richmond, California, where she lived from August 2008 to October 2008.  Pl. 56.1, ¶¶ 18-23, 25; Def. CSOF 56.1, ¶¶ 18-23, 25.  Plaintiff never received them.  Pl. 56.1, ¶ 26; Def. CSOF 56.1, ¶ 26.

In 2009, 2014, and 2015, Defendant IRR, with whom RSNY contracted to collect debts owed to RSNY, reported Plaintiff's RSNY debt to credit reporting agencies TransUnion and Experian.  *See*, Def. Opp'n, Ex. 2; Pl. 56.1, ¶¶ 28-30, 72; Def. CSOF 56.1, ¶¶ 28-30, 72; Pl. Ex. 6, Dkt. Entry No. 108-8 (Credit Karma Direct Dispute dated August 12, 2016, indicating $390.00 RSNY debt reported on June 4, 2009, $780.00 RSNY debt reported on April 16, 2014, and $780.00 RSNY debt reported on September 3, 2015).  On May 5, 2016, Plaintiff e-mailed IRR to dispute the RSNY debt.  Pl. Ex. 8, Dkt. Entry No. 108-10 (E-mail from Plaintiff to IRR dated May 5, 2016); Pl. 56.1, ¶ 35; Def. CSOF 56.1, ¶ 35.  In response to Plaintiff's e-mail, IRR provided a settlement proposal, which offered to reduce the amount owed from $1,950.00 to $1,365.00.  Pl. Ex. 10, Dkt. Entry No. 108-12 (IRR Settlement Proposal dated May 25, 2016); Pl. 56.1, ¶ 36; Def. CSOF 56.1, ¶ 36.  Subsequently, Plaintiff contracted with Debt Solutions Network ("DSN") to dispute the RSNY debt and have it removed from her credit report.  Pl. Ex. 12, Dkt. Entry No. 108-14 (Debt Solutions Network Agreement dated June 7, 2016); Pl. 56.1, ¶ 40; Def. CSOF 56.1, ¶ 40.  DSN submitted Plaintiff's dispute to IRR on June 10, 2016.  Pl. 56.1, ¶ 41; Def. CSOF 56.1, ¶ 41.

In July 2016, Plaintiff called RSNY and spoke to Cheryl Luckey ("Luckey"), RSNY's primary Collections Specialist who managed billing for embryo storage.  Pl. 56.1, ¶¶ 37, 50, 84; Def. CSOF 56.1, ¶¶ 37, 50, 84.  As a result of Plaintiff's conversation with Luckey, RSNY stopped billing Plaintiff for future charges, but did not waive charges made before July 2016.  Def. 56.1, ¶ 4; Pl. CSOF 56.1, ¶ 4; Pl. 56.1, ¶ 71; Def. CSOF 56.1, ¶ 71.  Although RSNY could have instructed

IRR to cease its attempts to collect the debt incurred prior to July 2016, it did not do so.  Pl. 56.1,
¶¶ 74-76; Def. CSOF 56.1, ¶¶ 74-76.

## II.    Procedural History

On May 24, 2017, Plaintiff commenced this action, asserting claims under New York state
law, the FDCPA, and the FCRA against Defendant IRR and its Director of Operations, Manghisi,
and New York state law claims against RSNY.  *See, generally*, Compl.  RSNY moved to dismiss
Plaintiff's claims against it and, on November 30, 2017, the Honorable Joseph F. Bianco, then
U.S. District Judge of this Court, denied RSNY's motion.[1]  *See*, Dkt. Entry No. 13; Telephone
Conf. Denying Motion to Dismiss for Failure to State a Claim, Dkt. Entry No. 34; *See also*, Pl.
Opp'n, Ex. 1 (Transcript of Civil Case for Telephonic Conference Before the Honorable Joseph F.
Bianco United States District Judge) ("Mot. to Dismiss Hr. Tr.").

Subsequently, Plaintiff entered into a consent judgment with Manghisi and IRR, pursuant
to which Plaintiff settled with Manghisi and dismissed all claims against IRR, except for the
FDCPA claim, for which IRR agreed to have judgment entered against it in the amount of
$1,000.00.  *See*, Dkt. Entry No. 93.  On July 23, 2019, this Court approved the consent judgment,
and Manghisi was terminated as a defendant.  *See*, Order Granting Motion to Approve Consent
Judgment dated July 23, 2019.  Although Plaintiff's claims against IRR were resolved, certain
issues regarding damages, attorney's fees, and costs remain and, therefore, IRR was not terminated
as a defendant.  *Id.*  On November 26, 2019, Plaintiff and RSNY filed the instant cross-motions
for summary judgment.

---

[1] This action was reassigned to the undersigned on April 5, 2019.

**LEGAL STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court "must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks and citations omitted). A fact is "material" if it "might affect the outcome of the suit under governing law." *Id.* (internal quotation marks and citations omitted). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant bears the "difficult burden" of establishing that there are no genuine issues of material fact such that summary judgment is appropriate. *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) (citation omitted). Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation marks, citation, and emphasis omitted). The nonmoving party may not rely on "[c]onclusory allegations, conjecture, and speculation." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted).

In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried[.]" *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986) (citations omitted); *See also*, *Jeffreys*,

426 F.3d at 553 ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.") (internal quotation marks and citation omitted).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The same legal standard applies to cross-motions for summary judgment. *C & A Carbone, Inc. v. Cnty. of Rockland, NY*, 2014 WL 1202699, at *5 (S.D.N.Y. Mar. 24, 2014) (citations omitted).  "[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.,* 249 F.3d 115, 121 (2d Cir. 2001) (citation omitted).  The Court is not required to grant summary judgment in favor of either moving party. *Id.* (citation omitted).

## DISCUSSION

## I.    Subject Matter Jurisdiction

As an initial matter, the Court notes that it lacks federal question jurisdiction and diversity jurisdiction over the pending motions because they concern only state law claims and both RSNY and Plaintiff are New York citizens. *See*, *Adames v. Taju*, 80 F. Supp.3d 465, 468 (E.D.N.Y. 2015) ("Federal-question jurisdiction gives federal district courts jurisdiction over suits 'arising under the Constitution, laws, or treaties of the United States.'") (quoting 28 U.S.C. § 1331; *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 217-18 (2d Cir. 2016) ("Diversity jurisdiction under 28 U.S.C. § 1332 is proper only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State.") (internal quotation marks and

citation omitted).   Nonetheless, as explained below, in the interest of judicial economy and fairness, the Court elects to exercise its supplemental jurisdiction.

In the absence of diversity or federal question jurisdiction, district courts may exercise "'supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.'" *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011) (quoting 28 U.S.C. § 1367(a)). Where the claims over which the court had original jurisdiction are dismissed, a court may decline to exercise supplemental jurisdiction. *See*, 28 U.S.C. § 1367(c); *Brooklyn Heights Ass'n v. Nat'l Park Serv.*, 818 F. Supp.2d 564, 570 (E.D.N.Y. 2011).   In determining whether to exercise supplemental jurisdiction, a federal court should weigh the "values of judicial economy, convenience, fairness, and comity." *Heckmann v. Town of Hempstead*, 2013 WL 1345250, at *2 (E.D.N.Y. Mar. 27, 2013) (internal quotation marks and citations omitted).

Here, Plaintiff's federal law claims arising under the FDCPA and FCRA against Manghisi and IRR, over which the Court had original jurisdiction, were dismissed pursuant to the parties' consent judgment. *See*, Dkt. Entry No. 93; Order Granting Motion to Approve Consent Judgment dated July 23, 2019.  However, the Court finds that it should retain jurisdiction over the pending state law claims against RSNY.  This action has been pending since 2017, and Plaintiff and RSNY have engaged in substantial discovery and twice completed dispositive motion practice.  Moreover, the state law claims do not present novel or unsettled issues that a state court would be better suited to decide.  Finally, remanding this case to state court at this juncture would require the parties to duplicate their efforts significantly.   Under these circumstances, retaining supplemental jurisdiction is appropriate. *See*, *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 102 (2d Cir. 2014) (holding that "the district court did not abuse its discretion when it decided that the

advanced stage of the litigation and the Court's long familiarity with the issues in the case, combined with the likely hardship to both parties should plaintiff be forced to re-file in state court weighed in favor of exercising supplemental jurisdiction[]") (internal quotation marks and citation omitted); *Koul v. Strong Mem'l Hosp.*, 282 F. Supp.3d 569, 570-71 (W.D.N.Y. 2017) (exercising supplemental jurisdiction over remaining state law claim where case had been pending for several years, discovery and dispositive motion practice had been completed, and state law claim presented no novel or unsettled issues).

## II.    Plaintiff's Breach of Contract Claim

Plaintiff alleges that RSNY breached the terms of the Consent Agreement by continuing to bill for embryo storage fees under circumstances that mandated the destruction of the Embryos and relief from Plaintiff's payment obligations.  Compl. ¶¶ 120-55.  According to Plaintiff, under the Consent Agreement, RSNY was required to destroy the Embryos and stop billing Plaintiff for storage fees:  (1) within five years of the date on which the Consent Agreement was executed; (2) in the event of Plaintiff and Hira's divorce or separation; or (3) upon non-payment of storage fees. *Id.* at ¶¶ 122-27, 139.  Notwithstanding the occurrence of each of these conditions, RSNY continued to store the Embryos and bill Plaintiff for the storage fees. *Id.* at ¶ 152.

The elements of breach of contract in New York are: "'(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" *Martino v. MarineMax Ne., LLC*, 2018 WL 6199557, at *3 (E.D.N.Y. Nov. 28, 2018) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).  Plaintiff's breach of contract claim fails as a matter of law because she cannot demonstrate that she has incurred damages as a result of RSNY's purported breach.

In the Complaint, Plaintiff alleged that Defendants' conduct resulted in harm to her credit and the need for her to hire a credit repair company. *See*, Compl. ¶¶ 2, 87. Accordingly, Judge Bianco found that Plaintiff had pled actual damages "in a general way[,]" and, therefore, denied RSNY's motion to dismiss for failure to allege damages. *See*, Mot. to Dismiss Hr. Tr., 11:15-12:2. However, on her motion for summary judgment, there is no dispute that Plaintiff fails to offer any proof of such damages. *See, e.g.*, Def. 56.1, ¶¶ 21-23; Pl. CSOF 56.1, ¶¶ 21-23. Rather, Plaintiff's claim against RSNY is based entirely upon alleged emotional distress damages. *See*, Compl. ¶¶ 156-57; Pl. Mem., 15-19; Pl. Reply, 3; Pl. Opp'n, 21-24. Plaintiff contends that her emotional distress is "clear" and caused by RSNY's "callous and heartless attempts to collect contractually unwarranted monies with knowledge of the horrendous experience that Plaintiff suffered[.]" Pl. Mem., 15.

Recovery for purely emotional injury is not permitted under New York law "except in extremely limited circumstances[,]" where the defendant breached a "special duty directly owed to the plaintiff." *Colorado Capital Invs., Inc. v. Providian Fin. Corp.*, 2007 WL 9724941, at *4 (E.D.N.Y. Mar. 26, 2007) (internal quotation marks and citations omitted). Similarly, with respect to breach of contract claims, there is no right of recovery for emotional damages "absent a duty upon which liability can be based[.]" *Rephen v. Gen. Motors Corp.*, 2016 WL 4051869, at *6 (S.D.N.Y. July 26, 2016) (internal quotation marks and citations omitted); *See also*, *Kruglov v. Copart of Conn., Inc.*, 771 F. App'x 117, 119 (2d Cir. 2019) (summary order) (holding that plaintiff could not "recover for emotional damages caused by a breach of contract[]") (citation omitted). The "limited exception" to the general rule that emotional damages are not recoverable in breach of contract actions requires a "special relationship" between the parties and the defendant's acts to

be "wanton or reckless[.]" *Hoheb v. Pathology Assocs. of Albany, P.C.*, 146 A.D.2d 919, 920 (3d Dep't. 1989) (citations omitted).

Plaintiff contends that RSNY "had a special duty to leave [her] alone" after she spoke to an unidentified RSNY employee in 2008 who informed her that RSNY "was aware of the circumstances concerning the murder of her mother." Pl. Mem., 15; *See also*, Pl. 56.1, ¶ 16. As an initial matter, Plaintiff cannot rely on this purported 2008 phone conversation as the only evidence that Plaintiff provides regarding the employee's statements is inadmissible hearsay. *See*, *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) (noting that a party cannot rely on inadmissible hearsay at the summary judgment stage, absent a showing that admissible evidence will be available at trial) (citations omitted); *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp.2d 206, 215 (S.D.N.Y. 2007), *aff'd*, 354 F. App'x 496 (2d Cir. 2009) (same) (citation omitted). Moreover, Plaintiff fails to show the existence of a special relationship between her and RSNY or explain how one phone call could create the kind of relationship that warrants an exception to the rule against emotional damages in breach of contract cases.

While the parties dispute whether this 2008 phone call ever occurred, such a factual dispute is immaterial where "there is an absence of sufficient proof as to one essential element of [a] claim." *See*, *Duse v. Int'l Bus. Machines Corp.*, 252 F.3d 151, 158 (2d Cir. 2001). Whether or not the phone call occurred, Plaintiff's failure to demonstrate the existence of a special relationship between her and RSNY renders her request for emotional damages meritless and defeats her claim for breach of contract. Accordingly, the factual dispute over the phone call does not suffice to defeat RSNY's motion for summary judgment. *See*, *Id.* (citations omitted).

Plaintiff fails to cite a single case in which emotional distress damages were awarded for breach of contract and instead relies on inapposite cases sounding in torts. *See*, Pl. Mem., 17 (citing *Perry-Rogers v. Obasaju*, 282 A.D.2d 231 (1st Dep't. 2001), where plaintiff was permitted to seek damages for emotional harm arising out of plaintiff's malpractice, and *Garcia v. Lawrence Hosp.*, 5 A.D.3d 227 (1st Dep't. 2004), where plaintiff was granted leave to amend complaint to include cause of action for emotional injury caused by plaintiff's negligence). That emotional damages are available for torts has no bearing on their availability for breach of contract. Indeed, New York courts have rejected breach of contract claims based on emotional damages in similarly tragic circumstances. *See, e.g.*, *Yates v. Genesee Cnty. Hospice Found., Inc.*, 299 A.D.2d 900, 901 (4th Dep't. 2002) ("[Hospice has] no duty to protect plaintiffs from emotional injuries sustained as the result of witnessing the allegedly negligent care provided to decedent by [hospice] . . . There is no foundation for such a duty where the claims asserted by [plaintiff] . . . are for . . . breach of contract[.]") (internal quotation marks and citations omitted); *Johnson v. Jamaica Hosp.*, 62 N.Y.2d 523, 528 (1984) (holding that parents could not recover for emotional damages from hospital based on their newborn's abduction from hospital nursery because the contractual relationship between parents and hospital did not give rise to a duty upon which liability could be based).

The Court further notes that, while Plaintiff claims to have "sought treatment from doctors . . . [for] the loss of her voice due to the stress caused by" RSNY, she fails to submit any evidence of such treatment. Pl. 56.1, ¶¶ 95-96; Def. CSOF 56.1, ¶¶ 95-96. Rather, she asserts that RSNY's conduct was "sufficiently outrageous," such that the Court may infer Plaintiff's emotional distress arising therefrom. Pl. Mem., 18. The Court does not doubt that Plaintiff suffered tremendously

as a result of her mother's murder at the hands of Plaintiff's ex-husband. However, Plaintiff's distress from her personal tragedy cannot be imputed to RSNY.

Plaintiff's failure to establish damages is fatal to her breach of contract claim. Accordingly, her motion for summary judgment on this cause of action is denied and RSNY's motion for summary judgment as to the breach of contract claim is granted.

## III.    Plaintiff's Gross Negligence Claim

Plaintiff alleges that RSNY "had an independent duty not to attempt to collect money from the Plaintiff in conjunction with unjustified embryo storage fees[,]" which it breached by "intentionally and unreasonably" sending Plaintiff's account to Defendant IRR for collection, in "disregard to the known and obvious risk that the Plaintiff would be greatly distressed by attempts to collect an unjustified debt so intricately and personally associated with her ex-husband[.]" Compl. ¶¶ 161-70. To state a claim for gross negligence, a plaintiff must show that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached this duty; (3) the plaintiff was injured by the breach; and (4) the defendant's conduct evinced "a reckless disregard for the rights of others or smacks of intentional wrongdoing." *Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp.3d 377, 391 (E.D.N.Y. 2018) (citations omitted). Plaintiff's gross negligence claim fails as a matter of law because there is no evidence that RSNY owed her a cognizable duty of care.

The existence and scope of RSNY's duty is a legal issue for the Court to resolve. *See*, *Alfaro v. Wal-Mart Stores*, Inc., 210 F.3d 111, 114 (2d Cir. 2000). Plaintiff contends that RSNY's duty of care arises out of the purported 2008 phone call during which an RSNY employee advised Plaintiff that RSNY was aware of her mother's murder and, therefore, would destroy the Embryos and stop charging Plaintiff for storage fees. *See*, Pl. Mem., 6-7. However, as discussed above

with respect to Plaintiff's breach of contract claim, Plaintiff's only evidence regarding the employee's statements is inadmissible hearsay, which the Court may not consider on summary judgment.  Even assuming, *arguendo*, that, in 2008, an RSNY employee told Plaintiff that RSNY would destroy the Embryos, Plaintiff fails to provide any authority in support of her argument that this conversation created a duty of care.

Accordingly, Plaintiff's gross negligence claim fails as a matter of law, and her motion for summary judgment with respect to this claim is denied.  RSNY's motion for summary judgment on Plaintiff's gross negligence claim is granted, and the claim is dismissed.

## IV.    Plaintiff's GBL § 349 Claim

Plaintiff alleges that, by "improperly billing customers for embryo storage fees[,]" RSNY engaged in a deceptive trade practice in violation of GBL § 349.  Compl. ¶ 175.  GBL § 349 prohibits "'deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state.'"  *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017) (quoting N.Y. Gen. Bus. Law § 349(a)).

As a threshold matter, RSNY contends that Plaintiff's claim is time barred.  *See*, Def. Mem., 9.  A GBL § 349 claim is subject to a three-year statute of limitations, which accrues when a plaintiff "has been injured by a deceptive act or practice[.]"  *Breitman v. Xerox Educ. Servs., LLC*, 2013 WL 5420532, at *4 (S.D.N.Y. Sept. 27, 2013) (internal quotation marks and citation omitted).  RSNY contends that Plaintiff's claim accrued when her RSNY debt was reported to a credit agency, first in June 2009, and again in April 2014.  *See*, Def. Mem., 9.  Thus, RSNY argues, the three-year statute of limitations expired, at the latest, in April 2017, one month before Plaintiff commenced this action in May 2017.

As explained below, Judge Bianco rejected this argument in denying RSNY's motion to dismiss. *See*, Mot. to Dismiss Hr. Tr., 3:15-5:4. In so doing, Judge Bianco relied on *Gaidon v. Guardian Life Ins. Co. of America*, 96 N.Y.2d 201 (2001), where the New York State Court of Appeals considered what constitutes an injury for purposes of determining when a GBL § 349 claim accrues.

In *Gaidon*, the plaintiffs brought a GBL § 349 claim against insurance companies alleging they had purchased their insurance policies based on the defendants' false representations that the plaintiffs would have to make out-of-pocket premium payments only for a certain number of years, after which the payments would "vanish," and the policies' dividends would cover the remaining premium costs. *Id.* at 211. The court rejected the defendants' contention that the claim accrued when the plaintiffs received their policies. Instead, it found that the plaintiffs were injured when they first were called to pay additional premiums beyond the date by which they had been led to believe that their premium payments would "vanish." *Id.* The court explained that plaintiffs did not sustain an injury until the point in time when their expectations that they would no longer have to make premium payments were not met. Therefore, the date when the additional premiums were demanded, rather than the date on which the plaintiffs had purchased their polices, triggered the three-year statute of limitations. *Id.* Applying *Gaidon*, Judge Bianco found that, because Plaintiff alleged she had received a collection letter dated July 15, 2015, her claim would be timely, if her allegation were proven to be true. *See*, Mot. to Dismiss Hr. Tr., 4:12-5:4.

The parties do not dispute that RSNY sent Plaintiff a collection letter on July 15, 2015. *See*, Pl. 56.1, ¶ 23, Ex. 3; Def. CSOF 56.1, ¶ 23. Based on *Gaidon*, Plaintiff's GBL § 349 claim accrued on July 15, 2015 as that is the date on which Plaintiff was injured by RSNY's purportedly deceptive conduct of improper billing. Accordingly, Plaintiff's GBL § 349 claim is timely.

RSNY also contends that Plaintiff's claim does not give rise to a private cause of action because it falls within the exclusive coverage of GBL § 601, not GBL § 349, as Plaintiff alleges RSNY attempted to collect a debt it was not owed.  *See*, Def. Mem., 6-8; Def Reply, 2-4.  GBL § 601 prohibits creditors or their "agents" from claiming, attempting, or threatening to "enforce a right with knowledge or reason to know that the right does not exist[.]"  N.Y. Gen. Bus. Law § 601(8).  Conduct prohibited by GBL § 601 can be remedied only by the New York State Attorney General or a district attorney, and there is no private right of action for GBL § 601 violations.  *See*, N.Y. Gen. Bus. Law § 602(2); *Conboy v. AT & T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (citation omitted).

RSNY's argument relies primarily on *Conboy v. AT & T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) and its progeny.  *See*, Def. Mem., 6-8; Def Reply, 2-4.  In *Conboy*, the plaintiffs alleged that the defendant had "engaged in a deceptive act within the meaning of Section 349 by violating [GBL] § 601[.]"  241 F.3d at 257-58.  The Second Circuit, noting that GBL § 601 does not authorize a private cause of action, held that the plaintiffs could not "thwart legislative intent by couching a Section 601 claim as a Section 349 claim."  *Id.* at 258.

While some courts have interpreted *Conboy* as standing for a general prohibition against asserting a GBL § 349 claim against a defendant whose conduct also constitutes a GBL § 601 violation, others interpret *Conboy* more narrowly to prohibit a Section 349 claim for conduct that is solely a violation of Section 601.  *Compare*, *Gomez v. Resurgent Capital Servs., LP*, 129 F. Supp.3d 147, 158-59 (S.D.N.Y. 2015) (applying *Conboy* to grant summary judgment in favor of defendants on plaintiff's GBL § 349 claim because defendants' conduct constituted a GBL § 601 violation) *with, Morales v. Kavulich & Assocs., P.C.*, 294 F. Supp.3d 193, 197 (S.D.N.Y. 2018) (collecting cases where courts found the *Gomez* Court's reading of *Conboy* "too broad").

Courts that interpret *Conboy* narrowly have rejected arguments identical to RSNY's. For instance, in *Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 163 F. Supp.3d 109 (S.D.N.Y. 2016), the court denied the defendant's motion for summary judgment finding "no basis" for the defendant's argument that the plaintiff's GBL § 349 claim must be dismissed where the underlying conduct also would support a GBL § 601 claim. *Id.* at 117. Similarly, in *Martinez v. Lvnv Funding, LLC*, 2016 WL 5719718 (E.D.N.Y. Sept. 30, 2016), the court rejected the defendants' argument that the plaintiff's GBL § 349 claim was "merely an artfully crafted complaint against abusive debt collection practices under GBL § 601," and explained that, "simply because a given set of facts would give rise to a claim under GBL § 601[,]" it did not mean that a private action under GBL § 349 would necessarily be barred. *Id.* at *2.

Notably, the *Conboy* plaintiffs alleged that a debt collector had called them in a harassing way, which was a violation of Section 601, but was not materially deceptive as required by Section 349. *Conboy*, 241 F.3d at 258. *Conoy* did not address conduct that supports claims under both Section 601 and Section 349. Upon due consideration of *Conboy* and subsequent cases in this Circuit that have addressed its holding, the Court "joins the weight of authority" in finding that a plaintiff can bring a Section 349 claim based on conduct that also violates Section 601 "as long as the conduct meets all of the elements of a [Section] 349 claim." *Morales*, 294 F. Supp.3d at 197; *See also*, *Samms*, 163 F. Supp.3d at 117 ("*Conboy* simply stands for the proposition that a § 601 claim is not necessarily a § 349 violation."); *Scott v. Greenberg*, 2017 WL 1214441, at *19 (E.D.N.Y. Mar. 31, 2017) ("*Conboy* does not hold that a section 349 claim may *never* overlap with a section 601 claim, only that a plaintiff cannot successfully avoid the lack of a private right of action under section 601 by bringing a section 349 claim.") (emphasis in original) (citation

omitted).  That being said, here, for the reasons discussed below, the Court finds that Plaintiff's §

349 claim fails as a matter of law.

To state a claim under § 349, "a plaintiff must allege that a defendant has engaged in (1)

consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury

as a result of the allegedly deceptive act or practice."  *Nick's Garage, Inc.*, 875 F.3d at 124 (internal

quotation marks and citation omitted).

The first element is satisfied here.  Consumer oriented conduct is conduct "which has a

broader impact on consumers at large."  *Koch v. Greenberg*, 626 F. App'x 335, 340 (2d Cir. 2015)

(internal quotation marks and citation omitted).  Section 349 does not extend to private contract

disputes unique to the parties.  *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010).  Thus,

"consumer-oriented conduct may be found where a bank engages with a customer walking in off

the street . . . but it will not lie where two sophisticated parties construct a unique contract to govern

their interactions[.]"  *Beth Israel Med. Ctr. v. Verizon Bus. Network Servs., Inc.*, 2013 WL

1385210, at *5 (S.D.N.Y. Mar. 18, 2013) (internal quotation marks and citations omitted).

RSNY contends that Plaintiff is "seeking relief based on a highly individualized set of

circumstances that does not involve the public at large."  Def. Mem., 12.  To the contrary,

Plaintiff's claim extends beyond the unique personal circumstances underlying her desire for

RSNY to destroy the Embryos.  Plaintiff's claim is based on RSNY's purported scheme to

improperly bill numerous RSNY patients in contravention to the Consent Agreement that these

patients signed.  *See*, Pl. Opp'n, 9-14; *See also*, *Id.* at Ex. 2 (Patricia Hennessy October 20, 2010

Deposition Transcript), 42:14-43:12 (explaining that RSNY patients sign Consent Agreement

before undergoing treatment).

Where, as here, the purportedly deceptive conduct is based on a form agreement that numerous consumers signed, rather than on a unique contract that is tailored to the plaintiff's circumstances, New York courts have found the conduct to be consumer oriented. *See, e.g.*, *McAnaney v. Astoria Fin. Corp.*, 665 F. Supp.2d 132, 175 n.41 (E.D.N.Y. 2009) ("Plaintiffs are permitted to proceed on . . . their § 349 claim incident to the breach of contract alleged in this case, because there is evidence that defendants have targeted consumers generally through standard form contracts, which were also administered in a standardized manner.") (citations omitted); *Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.*, 328 F. Supp.2d 443, 449 (S.D.N.Y. 2004) ("[Section] 349 liability attaches primarily where a party's misrepresentations are boilerplate and have the potential to be repeated in order to deceive numerous similarly situated buyers . . . Conversely, contracts that are not standard-issue, but are instead designed to provide services tailored to meet the plaintiff's wishes and requirements are not consumer-oriented for § 349 purposes.") (internal quotation marks and citations omitted); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995) (holding that where defendant provided the same "standard documents" to plaintiff that it provided to all customers, the transaction between plaintiff and defendant was not "unique" to them or a "single shot transaction," and, thus, defendant's conduct fell "within the "consumer-oriented ambit" of GBL § 349) (citation omitted).  Accordingly, there is no genuine dispute of material fact that RSNY engaged in consumer-oriented conduct by using the Consent Agreement to contract with its patients.

As to the second element of a GBL § claim, Plaintiff fails to offer any evidence that RSNY engaged in materially misleading conduct.  Misleading conduct is defined objectively as conduct that is "likely to mislead a reasonable consumer acting reasonably under the circumstances."

*Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (internal quotation marks and citation omitted).

Despite contending that evidence "strongly demonstrates" RSNY engaged in a deceptive practice, and despite submitting voluminous deposition transcripts and documents for the Court's review, Plaintiff entirely fails to cite to the record in her moving briefs. *See, generally*, Pl. Mem., 19-24; Pl. Reply, 5. Moreover, Plaintiff's argument that "[t]here is simply no present telling of how many consumers [were] improperly billed by RSNY for embryo storage fees after the embryos should have been destroyed pursuant to the . . . [Consent Agreement]," underscores that she lacks evidence of deceptive conduct. Pl. Mem., 21-22. Plaintiff's speculation as to how other patients were treated cannot sustain a GBL § 349 claim. *See, Cross v. State Farm Ins. Co.*, 2011 WL 4916534, at *4 (N.D.N.Y. Oct. 17, 2011) ("Although [p]laintiff speculates that others have been treated in similar fashion, these allegations are insufficient to state a plausible [GBL] § 349 claim."). Accordingly, Plaintiff is not entitled to judgment as a matter of law as to the GBL § 349 claim and her motion for summary judgment is denied.

By contrast, RSNY provides evidence that no other RSNY patients have found the Consent Agreement or RSNY's conduct related to the Consent Agreement misleading. RSNY submitted the affidavit of Michael Pagliuca ("Pagliuca"), RSNY's Practice Manager who has fifteen years of experience managing medical practices that provide fertility services. *See*, Pagliuca Aff. According to Pagliuca, other than Plaintiff, no RSNY patients ever claimed that the Consent Agreement or RSNY's storage fees and billing practices were misleading or deceptive. *Id.* at ¶¶ 12-14. Absent evidence that RSNY's conduct was misleading, summary judgment in favor of RSNY is warranted. *See*, *Yong Ki Hong v. KBS Am., Inc.*, 951 F. Supp.2d 402, 420-21 (E.D.N.Y. 2013) (granting summary judgment in favor of defendants where plaintiffs failed to adduce

evidence that the defendants' conduct "was in any way materially misleading to consumers[]"). Accordingly, RSNY's motion for summary judgment with respect to Plaintiff's GBL § 349 claim is granted.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is denied in its entirety and RSNY's motion for summary judgment is granted in its entirety. Accordingly, Plaintiff's claims for breach of contract, gross negligence, and violation of GBL §349 are dismissed, and RSNY is terminated as a defendant in this action.

SO ORDERED.

Dated:  Brooklyn, New York
      March 31, 2021

                                    /s/
                              DORA L. IRIZARRY
                         United States District Judge