**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------------x
**RITIKA KOHLI, *formerly known as* Ritika Hira,**

**Plaintiff,**

**MEMORANDUM AND ORDER**

**-against-**

**17-CV-3154 (RLM)**

**INDEPENDENT RECOVERY RESOURCES, INC., *et al.*,**

**Defendants.**
---------------------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

In 2017, plaintiff Ritika Kohli ("plaintiff") commenced this action against defendants Independent Recovery Resources, Inc. ("IRR") and its Director of Operations, Anita Manghisi ("Manghisi"), along with Reproductive Specialists of New York, LLP ("RSNY"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act, and New York General Business Law § 349 ("GBL § 349"), as well as claims for gross negligence and breach of contract. See generally Complaint (May 24, 2017) ("Compl."), Electronic Case Filing ("ECF") Docket Entry ("DE") #1.

Defendant RSNY was thereafter dismissed from this case, after having successfully moved for summary judgment on all claims against it. See Order on Motions for Summary Judgment (Mar. 31, 2021) at 22, DE #118. The remaining defendants—Manghisi and IRR—subsequently entered into a settlement agreement with plaintiff, pursuant to which Manghisi was dismissed as a defendant and IRR consented to have judgment entered against it with respect to plaintiff's FDCPA claim. See Consent Judgment (June 16, 2019) ("Consent

Judgment") at 1-2, DE #93-1.[1] Plaintiff then moved for damages on this FDCPA claim and, following an evidentiary hearing, this Court awarded her $50,000.00 in actual damages for emotional distress. See Minute Entry for Evidentiary Hearing (Oct. 4, 2021) ("10/4/21 Minute Entry"), DE #137; Memorandum and Order (Nov. 29, 2021) ("Mem. and Order") at 13, DE #141.

Currently pending before this Court, on consent to proceed before the undersigned magistrate judge, is plaintiff's request for attorney's fees and costs related to the FDCPA claim successfully brought against IRR. See generally Motion for Attorney Fees (Jan. 4, 2022) ("Pl. Mot."), DE #142;[2] Consent to Jurisdiction by US Magistrate Judge (Apr. 8, 2021), DE #120. For the reasons explained herein, this Court grants in part and denies in part plaintiff's motion, and awards plaintiff $46,620.00 in attorney's fees.

## BACKGROUND

On October 4, 2021, this Court conducted an evidentiary hearing, via videoconference, regarding plaintiff's actual damages under the FDCPA in connection with the settlement agreement between plaintiff and IRR. See 10/4/21 Minute Entry. During this hearing, the Court heard the testimony of plaintiff and her sister regarding the emotional distress that plaintiff had suffered as a result of IRR's attempts to collect money purportedly owed to RSNY

---

[1] Further, IRR agreed that this judgment would be in the amount of $1,000.00 (i.e., the statutory maximum), and that it would not oppose plaintiff's request for additional damages available under the FDCPA. See Consent Judgment at 2.

[2] In her motion, plaintiff also requests that this Court, in its discretion, retain jurisdiction over the matter of attorney's fees and costs for enforcement purposes. See Pl. Mot. at 2. The Court declines to do so.

for fertility services received by her and her ex-husband.[3] See id.; see generally Transcript of Evidentiary Hearing held on October 4, 2021 (docketed on Nov. 5, 2021), DE #140. Thereafter, on November 29, 2021, having considered the relevant testimony and evidence, this Court issued a Memorandum and Order awarding plaintiff $50,000.00 in emotional distress damages under the FDCPA. See Mem. and Order at 13.

Plaintiff now seeks attorney's fees in connection with her successful FDCPA claim against IRR, in the amount of $210,900.00.[4] See Arleo Time Records (Jan. 4, 2022) at 21, DE #142-1. Based on her submissions (as discussed *infra*), plaintiff apparently requests attorney's fees only with respect to work performed by her attorney of record, Robert L. Arleo, Esq., and no one else. See id. The requested fee award is comprised of Mr. Arleo's proposed $475.00 hourly rate for 222 hours of work purportedly spent related to the FDCPA claim against IRR ($475.00 x 222 = $105,450.00), plus a multiplier of 100 percent of this amount. See id.; Pl. Mot. at 1.

On January 4, 2022, after reviewing plaintiff's papers and identifying several deficiencies therein, the Court instructed plaintiff to supplement her submissions and provide "documentation substantiating [her] counsel's costs, along with a copy of [her] counsel's retainer agreement[.]" Scheduling Order (Jan. 4, 2022) ("1/4/22 Order"). In response, plaintiff's counsel submitted a partially redacted copy of his retainer agreement with plaintiff, as well as a letter representing that plaintiff would no longer be seeking costs in this action.

---

[3] Plaintiff's emotional distress was tied to circumstances that are unique and traumatic; specifically, plaintiff's ex-husband (with whom plaintiff was receiving fertility treatments) was abusive and violent toward her, and during one such violent episode, he stabbed and murdered her mother. See Compl. ¶¶ 31-36.

[4] Plaintiff has represented to the Court that she is no longer seeking costs, given that the majority of the costs incurred in this action have been paid from the proceeds of the settlement agreement with defendant Manghisi, and that those costs remaining are *de minimis*. See Letter (Jan. 7, 2022), DE #143.

See Letter (Jan. 7, 2022), DE #143; Partially Redacted Retainer Agreement (docketed on Jan. 7, 2022), DE #143-1. The Court thereafter required Mr. Arleo to provide the unredacted version of this retainer agreement, and to clarify certain aspects of his fee arrangement with plaintiff. See Scheduling Order (Jan. 26, 2022) ("1/26/22 Order"); Order re [DE #]144 Affidavit/Affirmation (Feb. 1, 2022) ("2/1/22 Order"). Plaintiff's counsel provided the unredacted retainer agreement to the Court, via email, which was then filed under seal; he also represented that, pursuant this retainer agreement, he would not take any portion of plaintiff's $50,000.00 damages award and that his fees would consist only of those awarded by the Court's ruling on the instant motion. See Order re [DE #]145 Letter (Feb. 1, 2022); Supplemental Affirmation in Compliance with Order to Explain Terms of Retainer Agreement (Feb. 2, 2022) at 1, DE #146; Sealed Unredacted Retainer Agreement (Feb. 2, 2022), DE #147.

## DISCUSSION

### I. Attorney's Fees

Having successfully brought an FDCPA claim, plaintiff may recover "a reasonable attorney's fee[.]" 15 U.S.C. §1692k(a)(3). "The Second Circuit has generally viewed the attorney's fees provision of the FDCPA as mandatory, awarding costs and reasonable fees as 'a matter of course' to prevailing plaintiffs." Rudler v. MLA Law Offices, Ltd., 19 CV 2170 (EK)(LB), 2021 WL 4755521, at *2 (E.D.N.Y. July 1, 2021) (quoting Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 95 n.8 (2d Cir. 2008)), adopted as modified, 2021 WL 4398087 (E.D.N.Y. Sept. 27, 2021).

While fee-shifting is considered mandatory under the FDCPA, the fee must nevertheless be reasonable. See id. at *2. In considering an application for an attorney's fee, the Court must first determine the presumptively reasonable fee. See Safeco Ins. Co. of Am. v. M.E.S., Inc., 790 F.App'x 289, 292 (2d Cir. 2019); Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 183-84 (2d Cir. 2008) ("Arbor Hill"). This presumptively reasonable fee—i.e., the lodestar[5]—is essentially "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (citation and quotations omitted). The party seeking a fee award must establish both the reasonableness of the rates charged and the necessity for the hours spent. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983); Savoie v. Merchs. Bank, 166 F.3d 456, 463 (2d Cir. 1999); Fermin v. Las Delicias Peruanas Rest., Inc., 93 F.Supp.3d 19, 51 (E.D.N.Y. 2015).

Courts can and should exercise broad discretion in determining a reasonable fee award. See Hensley, 461 U.S. at 437 ("The court necessarily has discretion in making this equitable judgment."); Arbor Hill, 522 F.3d at 190 (referencing the court's "considerable discretion"). The method for determining reasonable fees in this Circuit is based on several factors, including the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, experience, reputation, and ability, as well as awards in similar cases. See Arbor Hill, 522 F.3d at 186 n.3, 190. To determine the appropriate hourly rate, courts in this

---

[5] The lodestar is the product of the number of hours reasonably expended on the litigation and a reasonable hourly rate. See Arbor Hill, 522 F.3d at 183 ("The fee—historically known as the 'lodestar'—to which [] attorneys are presumptively entitled is the product of hours worked and an hourly rate.").

District follow the "forum rule," which "dictates that 'courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'" Bond v. Welpak Corp., 15-CV-2403 (JBW) (SMG), 2017 WL 4325819, at *5 (E.D.N.Y. Sept. 26, 2017) (quoting Simmons, 575 F.3d at 174).

Once the Court determines the reasonable hourly rate, it must multiply that rate by the number of hours reasonably expended in order to determine the presumptively reasonable fee or lodestar. See Arbor Hill, 522 F.3d at 183. The "fee award should be based on scrutiny of the unique circumstances of each case[.]" McDaniel v. Cty. of Schenectady, 595 F.3d 411, 426 (2d Cir. 2010) (citations and quotations omitted).

**A. Time Charges for Christine Arleo**

As an initial matter, plaintiff seems to be requesting fees only with respect to work performed by her attorney, Robert L. Arleo, Esq. See Arleo Time Records at 21. While the instant motion for attorney's fees references, and provides as attachments thereto, the contemporaneous time records of *both* Mr. Arleo and his law clerk, Christine Arleo, see Pl. Mot. at 1; Arleo Time Records; Time Records for Christine Arleo (Jan. 4, 2022) ("Law Clerk Time Records"), DE #142-2, the only hourly rate requested in the motion concerns Mr. Arleo, see Pl. Mot. at 1 (requesting $475.00 hourly rate for Mr. Arleo). Indeed, Mr. Arleo seems to concede that plaintiff's request for attorney's fees ($210,900.00) does not include his law clerk's time charges, as he has calculated his fee multiplier based on what appear to be his own time charges. See Arleo Time Records at 21. Moreover, even if the requested fee amount had properly accounted for and explicitly included Ms. Arleo's time charges, plaintiff has provided no information whatsoever about Ms. Arleo's background or education (except her title of

"law clerk") to support such a request.[6] See generally Pl. Mot.; Law Clerk Time Records; Affirmation in Support of Attorneys Fees and Costs (Jan. 4, 2022) ("Arleo Aff."), DE #142-3; see, e.g., Leser v. U.S. Bank Nat. Ass'n, No. 09–CV–2362 (KAM)(MDG), 2013 WL 1952306, at *13 (E.D.N.Y. May 10, 2013) (declining to award attorney's fees for work performed by an attorney where no information was provided regarding his position or years of experience). The Court therefore disregards Ms. Arleo's time charges and considers only those for Mr. Arleo in determining the appropriate fee award.

**B. Reasonable Hourly Rate**

With respect to Mr. Arleo, plaintiff requests that the Court approve an hourly rate of $475.00. See Pl. Mot. at 1. In a fee application, the "burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). Generally, "[t]he prevailing rates for experienced counsel in FDCPA cases in this district range from approximately $300 to $400 per hour." Rosen v. LJ Ross Assocs., 19 Civ. 5516 (ARR) (VMS), 2022 U.S. Dist. LEXIS 12702, at *13 (E.D.N.Y. Jan. 24, 2022) (citation omitted) (collecting cases); see Rudler v. MLA Law Offices, Ltd., 19-CV-2170(EK)(LB), 2021 WL 4398087, at *2 (E.D.N.Y. Sept. 27, 2021) ("Rudler II"); Seeger v. Ross & Assocs., 18-CV-03969 (ADS)(AYS), 2019 WL 5695944, at *5 (E.D.N.Y. Aug. 6, 2019). Yet, "courts rarely award rates greater than $350 even for the *most* experienced

[6] The Court notes that the chart setting forth Ms. Arleo's time charges also contains numerous errors, including columns that are either unlabeled or incorrectly labeled with respect to the hours expended and her hourly rate. See, e.g., Law Clerk Time Records at 1.

attorneys." Burkett v. Houslanger & Assocs., PLLC, 19-CV-2285 (EK) (JO), 2020 WL 7000188, at *3 (E.D.N.Y. July 23, 2020) (emphasis added) (collecting cases), adopted as modified, 2020 WL 5834429 (E.D.N.Y. Sept. 30, 2020); see also Rudler II, 2021 WL 4398087, at *2 (hourly rates "for law partners with *over* ten years' worth of experience in FDCPA cases generally range from $300 to $350" (emphasis added)).

According to his sworn affirmation, Mr. Arleo graduated from Widener University School of Law in 1989 and was admitted to the New York State Bar in 1991. See Arleo Aff. at 1-2. Mr. Arleo is a solo practitioner, and "the bulk of [his] legal practice [has been] representing parties in regard to the [FDCPA.]" Id. at 2. Further, Mr. Arleo avers that he has appeared as attorney of record "in almost six hundred . . . federal FDCPA actions" and is "recognized as a leading national FDCPA attorney." Id. at 2-3. In addition, Mr. Arleo has several years' experience teaching consumer law as an adjunct law professor at Thomas Jefferson School of Law in San Diego, California. See id. at 2.

While the Court recognizes Mr. Arleo's foregoing qualifications, his requested $475.00 hourly rate is nevertheless grossly in excess of the rates typically awarded in this District to attorneys with comparable experience in FDCPA cases. Plaintiff's counsel also effectively concedes that he has yet to be awarded an hourly rate of $475.00 in this District.[7] See Pl. Mot. at 1 (failing to cite any cases in which a court has awarded him this rate). Moreover,

[7] In support of his argument that a $475.00 hourly rate is warranted here, Mr. Arleo relies on Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C., in which the court awarded him an hourly rate of $420.00. See Pl. Mot. at 1 (citing No. CV-04-2195 (CPS), 2006 WL 3681138, at *9 (E.D.N.Y. Dec. 11, 2006)). However, in Reade-Alverez, Mr. Arleo was lead counsel in a "logistically complex" FDCPA class action with a "large and diffuse" class, and in which he "communicated with more than 100 class members, many of whom [were] not fluent in English, explaining the litigation and settlement of th[e] case[.]" Reade-Alvarez, 2006 WL 3681138, at *6, *5, *8-9. In contrast, here, Mr. Arleo represents a single plaintiff, Ms. Kohli, for whom he obtained a consent judgment against one of three defendants. See generally Consent Judgment.

plaintiff's FDCPA claim against IRR involved no novel legal issues that would otherwise warrant an upward departure from the typical range awarded.[8] Finally, on account of the Consent Judgment between plaintiff and IRR, plaintiff's motion for actual damages under the FDCPA was for all intents and purposes uncontested. In light of these considerations, the Court reduces Mr. Arleo's hourly rate to $350.00. See, e.g., Burkett, 2020 WL 7000188, at *2-3 (reducing hourly rate to $350 for co-director of special litigation group for legal assistance organization where the plaintiff's FDCPA claims were not "particularly novel"); Razilova v. Halstead Fin. Servs. LLC, 18-CV-1668 (RRM)(PK), 2019 WL 1370695, at *7 (E.D.N.Y. Mar. 1, 2019) (reducing hourly rate to $350 for two founding partners with more than 17 years' experience each in multiple state and federal courts), adopted, 2019 WL 1364399 (E.D.N.Y. Mar. 26, 2019); Dagostino v. Computer Credit, Inc., 238 F.Supp.3d 404, 412-13 (E.D.N.Y. 2017) (Bianco, J.) (reducing hourly rate to $350 for two founding members of law firm who were admitted to the New York bar in 2000 and 1994, respectively, in a "case [that] did not present any novel or difficult questions of law and did not require a high level of skill").

**C. Reasonable Number of Hours**

"The next step [in the lodestar analysis] is to determine the reasonableness of the hours expended by counsel." Feltzin v. Union Mall LLC, 393 F.Supp.3d 204, 211 (E.D.N.Y. 2019) (citation omitted). As an initial matter, and as plaintiff appears to concede, see Pl. Mot. at 1, defendant "can only be required to pay for hours attributable to [p]laintiff's success[,]"

---

[8] Indeed, as Mr. Arleo previously noted, the single claim on which plaintiff prevailed was one for which IRR was strictly liable. See Letter (Sept. 22, 2021) at 2, DE #135 (citing Vangorden v. Second Round, L.P., 897 F.3d 433, 437-38 (2d Cir. 2018)).

Rosen, 2022 U.S. Dist. LEXIS 12702, at *15—i.e., the FDCPA claim against IRR. Secondly, "[t]he number of hours spent on a lawsuit are considered unreasonable if they are excessive, redundant, or unnecessary." Feltzin, 393 F.Supp.3d at 211. "[I]n dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" Rosen, 2022 U.S. Dist. LEXIS 12702, at *17 (quoting Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998)). Moreover, "where counsel seeks compensation for time spent completing administrative tasks or work that should have been accomplished by a less-skilled practitioner, '[u]niform percentage cutbacks are [also] warranted.'" Bannister v. Berkman, Henoch, Peterson, Peddy & Fenchel, P.C., CV 20-1810 (MKB) (AKT), 2021 WL 4268139, at *5 (E.D.N.Y. July 23, 2021) (quoting De La Paz v. Rubin & Rothman, LLC, No. 11 Civ. 9625(ER), 2013 WL 6184425, at *4 (S.D.N.Y. Nov. 25, 2013), and collecting cases), adopted, 2021 WL 3578526 (E.D.N.Y. Aug. 12, 2021). To be sure, "it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent." John v. Demaio, 15 CV 6094 (NGG) (CLP), 2016 WL 7469862, at *9 (E.D.N.Y. Sept. 29, 2016) (internal quotations and citations omitted), adopted, 2016 WL 7410656 (E.D.N.Y. Dec. 22, 2016).

Here, plaintiff's counsel purports to have spent 222 hours related to litigating plaintiff's FDCPA claim against IRR.[9] See Arleo Time Records at 21. Mr. Arleo represents that he

---

[9] Given the unwieldy format of Mr. Arleo's 21-page time records, and the prohibitively time-intensive nature of such an undertaking, the Court has not expended judicial resources to independently confirm that Mr. Arleo has correctly calculated the total sum of his time charges; courts "need not, and indeed should not, become green-eyeshade accountants." Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay, CV 10-2262

"attempted" to remove from his contemporaneous records "time which was spent on the motion for summary judgment filed by [RSNY] in regard to the New York law claims . . . , and for other hours devoted to the New York [law] claims."[10] Pl. Mot. at 1. Even with these time charges excluded, the number of compensable hours requested by Mr. Arleo is still excessive, and, upon closer scrutiny, many of his time charges prove to be vague, unnecessary, and/or improperly billed.

First, several of Mr. Arleo's time charges relate to tasks that should have been completed by his law clerk (or an administrative staff member), or else billed at a vastly lower hourly rate. See, e.g., Arleo Time Records at 1 (time entry for "download[ing] filed exhibits"); id. at 15 (time entries for contacting chambers and "ECF clerk" regarding logistical difficulties with ECF filings, billed at $475.00 hourly rate). Moreover, while Mr. Arleo claims to have excluded time charges unrelated to plaintiff's FDCPA claim (in particular, those pertaining to her state law claims), he appears to have failed to exclude a substantial amount of time—more than 22 hours—spent opposing RSNY's motion to dismiss the state law claims against it.[11] See id. at 2; Memorandum of Law in Support of RSNY's Motion to Dismiss the Complaint (Aug. 1, 2017) at 6, DE #14 (defense motion to dismiss plaintiff's claims for breach of contract, negligence, and violation of GBL § 349). The Court further observes that Mr. Arleo's contemporaneous time records include other vague, excessive, and/or unrelated time

(DRH)(AYS), 2019 WL 2870721, at *3 (E.D.N.Y. June 18, 2019) (citation omitted), adopted, 2019 WL 2869150 (E.D.N.Y. July 3, 2019).

[10] Mr. Arleo states that these excluded time charges have been italicized in his records. See Pl. Mot. at 1.

[11] The Court notes that these time entries also are vague and fail to differentiate between the time spent researching state law issues and time spent drafting plaintiff's opposition to RSNY's motion. See Arleo Time Records at 2 (ten entries with descriptions stating only "Opp to m2dis").

entries. See, e.g., Arleo Time Records at 14 (three hours billed at $475.00 hourly rate for "[c]ontinuing reviewing emails"); id. at 8 (over ten hours spent "drafting answers" to defendants' "interrogatories and RPDs"); id. at 4 (entries for time spent related to Judge Bianco's decision to deny RSNY's motion to dismiss state law claims). Finally, the Court notes the overall lack of care taken by counsel in preparing the instant motion for attorney's fees (despite Mr. Arleo purportedly spending almost seven hours in preparation thereof, see id. at 21), namely, the motion's lack of specificity, the failure to include background information for his law clerk, Ms. Arleo, the lack of clarity, and the numerous supplementations needed due to deficiencies in the submissions, see 1/4/22 Order; 1/26/22 Order; 2/1/22 Order.

In light of these observations, the Court applies an across-the-board reduction in hours of 40 percent, which is well within the range of reductions imposed by other courts in this Circuit under similar circumstances. See, e.g., Rosen, 2022 U.S. Dist. LEXIS 12702, at *20 (recommending 30% reduction in FDCPA case based on excessive billing, duplicative entries, and "instances of partners performing work that should have been done by a low-level associate or paralegal"); Datiz v. Int'l Recovery Assocs., Inc., 15-cv-3549 (DRH)(AKT), 2020 WL 3790348, at *1, *4-5 (E.D.N.Y. July 7, 2020) (reducing FDCPA fee award by 40% due to excessive billing, redundant work, and basic/intermediate tasks performed by senior attorneys); Seeger, 2019 WL 5695944, at *6 (recommending 20% reduction in hours expended in FDCPA action based on the court's observation of "the care (or lack thereof) taken in [plaintiff's counsel's] preparation [of the papers]"); Barshay v. Specified Credit Assocs. I, Inc., CV 15-1044 (DRH)(AYS), 2016 WL 3578993, at *5 (E.D.N.Y. June 3, 2016) (reducing total hours in FDCPA action by 20% due to duplicative work, the fact that many tasks could

have been performed by "a less experienced associate," and overall lack of care taken in preparation of materials submitted to the court), adopted sub nom. Barshay v. Specified Credit Assocs. 1, Inc., 2016 WL 3582058 (E.D.N.Y. June 28, 2016); see also Gagasoules v. MBF Leasing LLC, 296 F.R.D. 107, 111-12 (E.D.N.Y. 2013) (collecting cases and imposing 40% reduction due to vague and unrelated time entries); Barbu v. Life Ins. Co. of N. Am., No. 12-CV-1629 (JFB)(SIL), 2015 WL 778325, at *5-6 (E.D.N.Y. Feb. 24, 2015) (applying 33% reduction in hours based on vague entries and block billing), vacated in part on other grounds, 2015 WL 13753126 (E.D.N.Y. May 20, 2015); Ritchie v. Gano, 756 F.Supp.2d 581, 583-84 & nn.1-2 (S.D.N.Y. 2010) (applying 40% reduction in hours spent on copyright and trademark claims where counsel failed to parse out "how much time [was] spent on each claim" and "referred to an unrealistic volume of hours as 'inextricably intertwined' with" state law claims).

Thus, the Court awards plaintiff attorney's fees for 133.2 hours of work performed by Mr. Arleo.

**D. Fee Multiplier**

Plaintiff's counsel also requests that the Court approve a multiplier of 100 percent of his inflated lodestar. See Arleo Time Records at 21 (requesting additional $105,450.00); Pl. Mot. at 1. "In certain circumstances, a court may [] award the attorneys a premium by applying a 'multiplier' to the lodestar amount." *In re* Tremont Secs. Law, State Law & Ins. Litig., 820 F.App'x 15, 17 n.1 (2d Cir. 2020) (citation omitted). "Courts customarily consider whether a multiplier should be applied to the lodestar to account for 'less objective factors' that may be taken into consideration in setting an appropriate fee." Moore v.

Diversified Collection Servs., Inc., No. 07–CV–397 (ENV)(VVP), 2013 WL 1622949, at *6 (E.D.N.Y. Mar. 19, 2013) (citing Savoie, 166 F.3d at 460), adopted, 2013 WL 1622713 (E.D.N.Y. Apr. 15, 2013). "Generally, however, all of the factors relevant to [a] plaintiff's request for [a] multiplier are considered in the Court's determination of an appropriate hourly rate." Id. (citation omitted).

Here, plaintiff's counsel argues that a multiplier is warranted because he obtained a "valuable settlement" for plaintiff by "open[ing] a separate door for [her] to recover based upon the agreement by IRR and Manghisi to assign its contractual indemnification provision with RSNY to the [p]laintiff as part of the Consent Judgment." Pl. Mot. at 1-2. In support of his request, Mr. Arleo also relies upon Foti v. NCO Financial Systems, Inc., wherein the court approved a multiplier equal to 157 percent of the amount of the total lodestar for class counsel, which included Mr. Arleo. See id. at 1. However, Foti is distinguishable from the instant action. There, the court approved a multiplier in the context of a "complex and novel" FDCPA class action, in which Mr. Arleo (one of a group of class counsel) helped to secure the putative class "a valuable settlement that will change [the defendant's] debt collection practices in a tangible way[.]" Foti v. NCO Fin. Sys., Case No. 04 Civ. 00707 (RJS), 2008 U.S. Dist. LEXIS 16511, at *25 (S.D.N.Y. Feb. 19, 2008). In addition, the settlement in that case anticipated that class counsel would have to "continue to expend time and labor in monitoring [the defendant's] compliance with the injunction and reviewing claims against [the defendant] on a monthly basis." Id. at *22. Here, in contrast, Mr. Arleo secured a settlement agreement on behalf of an individual plaintiff, who was awarded $50,000.00 in actual damages under the

FDCPA after filing a motion for actual damages that was unopposed by IRR. See Mem. and Order at 13.

Moreover, in a non-class context, such as this one, a multiplier would appear to be contrary to the thrust of Arbor Hill, in which the Second Circuit held that a fee award should correspond to the "minimum [amount] necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190. But, even assuming *arguendo* that no legal bar exists to awarding a multiplier in a non-class context, the present case is not one in which a multiplier is warranted, as "[n]othing about th[e] matter was particularly extraordinary nor were the issues complex or novel." Moore, 2013 WL 1622949, at *6-7 (denying request for a fee multiplier where plaintiff accepted defendant's Rule 68 offer of judgment, following aggressive litigation between the parties). In fact, and for the reasons addressed *supra*, Mr. Arleo's lodestar warrants a reduction, not the twofold increase that would result from the requested multiplier. Accordingly, the Court declines to award a fee multiplier.

In sum, using the adjusted rates and hours, the Court awards plaintiff a total of $46,620.00 in attorney's fees ($350.00 hourly rate x 133.2 hours).

**CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part plaintiff's motion for attorney's fees, as follows: Plaintiff is awarded a total of $46,620.00 in attorney's fees with respect to her FDCPA claim against defendant IRR. The Court declines to award a fee multiplier or costs in this action. Finally, plaintiff's request that this Court retain jurisdiction over the issue of attorney's fees and costs is denied.

The Clerk is respectfully requested to enter judgment consistent with this opinion, the Consent Judgment of June 16, 2019, and the Court's Memorandum and Order of November 29, 2021; and to close the case.

**SO ORDERED.**

**Dated: Brooklyn, New York**
**March 9, 2022**

/s/ *Roanne L. Mann*
**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**